IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JAMES TUCKER and
MINDY TUCKER                                              PLAINTIFFS

v.                        No. 1:11-cv-44-DPM

SOUTHWESTERN ENERGY CO.;
CHESAPEAKE ENERGY CORP.;
and BHP BILLITON PETROLEUM
(FAYETTEVILLE) LLC                                         DEFENDANTS


PHILLIP BERRY and
PEGGY BERRY                                               PLAINTIFFS

v.                        No. 1:11-cv-45-DPM

SOUTHWESTERN ENERGY CO.;
CHESAPEAKE ENERGY CORP.;
and BHP BILLITON PETROLEUM
(FAYETTEVILLE) LLC                                         DEFENDANTS

ORDER

1. Drilling by hydraulic fracturing—fracking—has recently come to

Arkansas in a big way.  Development of the natural gas deposits in the

Fayetteville Shale is proceeding apace.  Fracking is not a new process. *E.g.,*

*O'Brien v. Primm*, 243 Ark. 186, 188-89, 419 S.W.2d 323, 324-25 (1967)

(describing "sand fracting" in 1964 in an oil well in Ouachita County).  But

using fracking in deep wells with horizontal bores is new in the natural-gas

industry. *See, e.g.,* U. S. Energy Information Administration, *Today in Energy: Technology Drives Natural Gas Production Growth from Shale Gas Formations* (12 July 2011).* In the way of our world, various disputes arising from this business are turning into lawsuits. This Court, for example, has adjudicated disputes about payments on mineral leases, the dealings between land owners and frack-sand miners, the wages paid by a company that does fracking, and an accident during drilling. Now come these cases, which allege damage to property near the wells.

The Tuckers and the Berrys own, and live on, small parcels of land in Quitman. The Tuckers have ten acres; the Berrys, thirteen. Part of this town straddles the Faulkner–Cleburne county line, and each couple lives in one of these counties. Southwestern Energy Company, Chesapeake Energy Corporation, and BHP Billiton Petroleum (Fayetteville) LLC, operate frack wells within several miles of the Tucker and Berry tracts.

In these consolidated cases, the Tuckers and the Berrys have sued the companies, seeking both substantial damages and injunctive relief in the form

---

* The report is available at http://www.eia.gov/todayinenergy/ detail.cfm?id=2170

of monitoring. They assert claims for nuisance, trespass, negligence, and strict liability. The Tuckers say the fracking has contaminated their water well; the Berrys say it has contaminated their air. The couples also seek class certification. The companies respond with motions to dismiss the complaints or for a more definite statement of the claims. Southwestern Energy also makes a preemptive strike against class certification. The main questions presented are whether the Tuckers and the Berrys have pleaded enough facts to state plausible claims, *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009), and whether some of their claims fail as a matter of law in any event.

   **2.** The Tucker and Berry complaints are too thin on some critical facts. But the fix is not dismissal at this point. The Tuckers and the Berrys, as Southwestern Energy suggested in the alternative, must replead their claims with more factual definiteness for the case to go forward.

   These complaints are mostly conclusions and general statements. There are only a few facts pleaded with any specificity. The Tuckers say the companies have frack wells within one mile of their property; the Tuckers' well water used to be fine; then it started smelling bad and a recent test

revealed alpha methylstyrene, a poisonous chemical sometimes used in fracking fluid. The Berrys point to frack wells within three miles of their property; they say a water well (forty feet from their property line) and ponds on adjoining property are contaminated with methane and hydrogen sulfide; and despite Southwestern Energy's efforts to solve the problem, the Berrys say these substances continue to spew into the air from the well, polluting their property. They attach to their complaint a dramatic photograph: it shows flames shooting from some kind of box that apparently capped the water well.

Settled pleading law requires the Tuckers and the Berrys to plead enough facts to state legal claims against particular defendants that are not just possible, but plausible. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). Drawing this line is more art than science, a matter of common sense and judicial experience. *Hamilton v. Palm*, 621 F.3d 816, 818 (8th Cir. 2010). The Berrys have come very close to pleading enough facts to state a nuisance claim against Southwestern Energy. The photograph, for example, speaks loudly and clearly. The only missing piece is that they've not alleged specific facts tending to show Southwestern Energy did anything to

cause this contamination. Perhaps this is a reasonable inference from the company's efforts to fix the problem, though Southwestern Energy says it was just acting at the Arkansas Oil and Gas Commission's request. In any event, another pleaded fact or two should shore up this claim. And all the detail about the methane-and-hydrogen-sulfide-spewing water well next door to the Berrys illustrates the deeper point: the current pleading gaps in the other claims.

Missing are particular facts about particular fracking operations by particular fracking companies using particular substances that allegedly caused the Berrys' air problems and the Tuckers' water problems. General statements about the many dangerous substances used in fracking, and conclusory statements about the migration of those substances, will not suffice. For their claims to be plausible in the strong sense recently dictated by the Supreme Court, the Tuckers and the Berrys must plead more facts linking each company's operations with the particular harm alleged. *Iqbal*, 556 U.S. at ___, 129 S. Ct. at 1949.

As they stand, the complaints (especially the Tuckers') are mostly a matter of "after this, therefore because of this" — bad things happened after

the fracking, and therefore because of the fracking.  But this fallacy is not sound as a matter of logic or law.  *Schmoll v. Hartford Casualty Insurance Co.*, 104 Ark. App. 215, 220, 290 S.W.3d 41, 45 (2009).

This is not to say that the Berrys and the Tuckers must now plead (or eventually prove) their case with the exactitude required in a car-wreck case. As the Arkansas Supreme Court recognized decades ago in a case about damage to a water well from underground blasting, "there is no feasible way to prove *exactly* what happens beneath the surface from such explosion." *Western Geophysical Company of America v. Mason*, 240 Ark. 767, 769, 402 S.W.2d 657, 658 (Ark. 1966) (emphasis added).  Perhaps the relevant science has advanced in the last fifty years so that a clearer picture will be available. At a minimum, however, the Tuckers and the Berrys must allege more than that fracking fluids are dangerous, migratory animals.  This is a conclusion.

The Tuckers and the Berrys must plead more facts to give the companies adequate notice of what and how each driller supposedly did wrong. "Although Arkansas law does not require proof of the precise damage caused by each of several tortfeasors, it remains a requirement that the [Tuckers and the Berrys] must show that tortious conduct was a substantial factor in

causing the harm." *Rogers v. Armstrong World Industries, Inc.*, 744 F. Supp. 901, 904–05 (E.D. Ark. 1990) (quotation omitted). The Tuckers and the Berrys, of course, need not make this showing with proof until the case reaches the summary-judgment stage. But at the threshold, they must allege specific facts linking each company's acts or omissions with their harm. Arkansas has not recognized market-share liability or similar doctrines that loosen the applicable causation standard. *Rogers*, 744 F. Supp. 2d at 905. The Tuckers and the Berrys must therefore plead more than "company X was involved in fracking within a few miles of my property" to state plausible claims.

**3.** The companies also argue that some of the Tuckers' and the Berrys' claims fail on the law no matter what. At this point, the Court disagrees.

The Tuckers and Berrys allege that the companies, "by engaging in abnormally dangerous and ultra[-]hazardous activities, are strictly liable without regard to fault for all the damages and injuries to the Plaintiffs proximately caused by their [activities] including hydraulic fracturing." *Document No. 2 (Tucker), at 11*. Arkansas law does impose strict liability when an ultra-hazardous activity goes awry. *E.g., Zero Wholesale Gas Co. v. Stroud*, 264 Ark. 27, 31, 571 S.W.2d 74, 76 (Ark. 1978).

Have the companies engaged in an ultra-hazardous activity?  If the companies' gas-production activities (1) necessarily present a risk of serious harm which cannot be eliminated by the exercise of utmost care and (2) are not a matter of common usage, the answer is "yes."  264 Ark. at 31, 571 S.W.2d at 76.  If either condition is not met, the answer is "no."  *Ibid.*  The companies cite many cases for the proposition that natural gas production is not ultra-hazardous.  But they have identified no case so holding in the context of modern fracking.

Whether fracking is ultra-hazardous is a question of law, but one the Court cannot answer yet. The record lacks sufficient information to make this fact-intensive judgment.  The better course was charted in *Fiorentino v. Cabot Oil & Gas Corp.*, 750 F. Supp. 2d 506, 511–12 (M.D. Pa. 2010), and *Berish v. Southwestern Energy Production Co.*, 763 F. Supp. 2d 702, 705 (M.D. Pa. 2011). The legal adequacy of the strict-liability claim should be decided on a full record at the summary-judgment stage.

Now to trespass.  The Tuckers allege that alpha methylstyrene, a component of some fracking fluid, has made their well water undrinkable and unsafe. *Document No. 2 (Tucker), at 8–9.*  The Berrys allege that methane and

hydrogen sulfide spouting from a water well on adjacent property is polluting the air over their property. *Document No. 1-1 (Berry), at 8-9.* Candidly acknowledging that the Tuckers may have a trespass claim about their groundwater contamination if they can plead the causation facts, BHP Billiton argues that the Berrys have no such claim about their air contamination. This is, the company says, a matter of nuisance, not trespass. *Document No. 62, at 10-11.*

Arkansas law has not answered whether a trespass occurs when a thing passes unwanted through the air above a person's property. The weight of authority from the other states appears to favor BHP Billiton's position that this scenario is a nuisance, not a trespass. But the legal principles at work, *e.g.,* RESTATEMENT (SECOND) OF TORTS § 158, support the trespass claim. Noxious substances are entering the air right above the Berrys' land and remaining there long enough to be detected before the wind moves them on. No one is removing the substances; the wind is. *Ibid.* If it is an actionable trespass to "to fly an advertising kite or balloon through the air above [the Berrys' land]," then sending noxious chemicals their way is a trespass too. RESTATEMENT (SECOND) OF TORTS § 158 cmt. i.

This claim may be suspenders over the belt of nuisance.  In Arkansas, however, the "right of property is before and higher than any constitutional sanction[.]" ARK. CONST., art II, § 22.  And if the Court is going to err at the pleading stage on drawing the line between trespass and nuisance, it will err on the side of the Berrys' property rights.  Their trespass claim stays for now.

**4.** Southwestern Energy also moves to deny class certification.  The Tuckers and the Berrys say this motion is premature.  They are right.  The Court, however, makes these preliminary observations. First, there does seem to be some tension between seeking a Federal Rule of Civil Procedure 23(b)(2) class, where injunctive relief must be the primary remedy, and seeking substantial damages.  The Court will benefit from further briefing on this issue in due course.  Second, the Court wonders, once the Tuckers and the Berrys plead their particulars and offer proof about them, whether common issues are going to predominate across all affected landowners in the Fayetteville Shale.  We shall see.  This, too, is an issue for resolution on a full factual record and detailed legal argument at the certification stage.

\* \* \*

The motions to dismiss or for a more definite statement, *Document Nos. 39, 47 & 49*, and *Document No. 39* in case no. 1:11-cv-45-DPM, are granted in part and denied in part.   The Tuckers and the Berrys must file amended complaints by 9 March 2012.   When the companies file motions in the future, the Court requests that they either file a joint brief or adopt each other's arguments where possible to reduce the volume of paper.   The early motion to deny certification, *Document No. 76*, is denied.

So Ordered.

D.P. Marshall Jr.
United States District Judge

17 February 2012